IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIANNE PAVLOVITZ,

          Plaintiff,

  v.                                                                                                  CIVIL ACTION
                                                                                                        NO. 13-1575
RELIANCE STANDARD LIFE INSURANCE
COMPANY and MATRIX ABSENCE
MANAGEMENT, INC.,

          Defendants.

## MEMORANDUM OPINION

**Schmehl, J.  s/s JLS**                                                                  February 26, 2015

       Plaintiff, Marianne Pavlovitz ("Pavlovitz" or "Plaintiff"), brings the instant action to challenge the denial of her claim for disability benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) against Reliance Standard Life Insurance Company ("Reliance"), the insurance company that funded and administered the disability insurance plan provided by her employer, and Matrix Absence Management, Inc. ("Matrix"), the claims administrator who issued the initial denial of her claim. Pavlovitz claims that Reliance's denial of her claim for long term disability benefits was arbitrary and capricious.

       The parties have each moved for summary judgment. Pavlovitz argues that the record supports a finding of Chronic Pain Syndrome and mental disability and therefore, Reliance's determination that she is not entitled to a long term disability benefits was incorrect. Reliance maintains that its decision to deny Pavlovitz benefits was not arbitrary and capricious, but based on substantial evidence contained in the record that Pavlovitz

failed to meet the terms of the Policy in order to entitle her to long term disability benefits. After a thorough examination of the administrative record and applying a deferential standard of review, I find that Reliance did not act in an arbitrary and capricious manner when it denied Pavlovitz's disability benefits after it determined the record did not support her satisfaction of the Elimination Period. I further find that Reliance also did not act in an arbitrary and capricious manner when it found Plaintiff was no longer a covered employee under the Policy, and that Plaintiff's Bipolar disorder was a pre-existing condition. Lastly, I find that Plaintiff's breach of contract claim is preempted by ERISA, and that her ERISA claim fails against Matrix. Therefore, I will grant Defendants' motion for summary judgment and deny Pavlovitz's motion for summary judgment.

**I.      BACKGROUND**

On May 3, 2010, Pavlovitz began working for Albert Einstein Healthcare Network as a full-time Registered Nurse. (Compl. ¶ 9.) As such, she was an eligible participant in the Albert Einstein Healthcare Network employee welfare benefit plan, effective August 1, 2010. (Compl. ¶ 10.) This plan was funded with a Reliance Standard group long term disability insurance policy which provided for payment of 60% of an employee's salary in the event of total disability. (AR 1-32.) Under this Reliance policy, Reliance is granted discretion to interpret the terms of the Policy and to determine claims for benefits under the Policy. (AR 16.)

Pavlovitz stopped working on June 27, 2011 and underwent an emergency appendectomy on June 29, 2011. (AR 291-292, 548.) On July 13, 2011, she underwent a mastectomy and reconstruction due to a diagnosis of breast cancer. (AR 410-411.) On

September 24, 2011, Pavlovitz's family doctor assessed that she was suffering from chronic pain syndrome caused by breast pain from her surgical procedure. (AR 324.) On November 9, 2011, Plaintiff's family doctor stated that she was "totally disabled," and on December 1, 2012, his diagnoses included chronic pain syndrome and adjustment reaction. (AR 321, 317.) On February 27, 2012, Plaintiff was diagnosed with bipolar disorder. (AR 718.)

On or about November 2, 2011, Pavlovitz submitted a claim for LTD benefits based upon abdominal pain and a lump in her breast. (Compl. ¶ 16, AR 343-347.) On February 4, 2013, Reliance denied Pavlovitz's claim for LTD benefits and advised her of her right to appeal. (Compl. ¶ 25, Ex. F.) Pavlovitz failed to appeal and then commenced the instant lawsuit on March 26, 2013.[1] Pavlovitz was then permitted to appeal Reliance's denial on July 12, 2013, and on October 22, 2013, Reliance informed Pavlovitz that it was upholding its decision to deny her LTD benefits because she was not impaired for a minimum of 360 days as required by her Policy, because she was no longer eligible for coverage under the Policy as of June 27, 2011, her last day of work, and because her bipolar disorder was a pre-existing condition. (AR 760-766.)[2]

---

[1] Plaintiff filed the instant litigation prior to pursuing an appeal of Reliance's February 4, 2013 decision.

[2] This matter has been complicated by the fact that Pavlovitz was apparently covered by two separate LTD policies while employed by Albert Einstein Health Network. The waters are further muddied because both of these Albert Einstein LTD policies used Matrix as a claims administrator. After much review of the record, I have determined that Albert Einstein Healthcare Network covered Plaintiff under LTD policy number LTD-4609, claim number 726739, administered by Matrix Absence Management. Reliance did not fund and/or administer that claim, and that policy is not the subject of the instant litigation. Albert Einstein had a second LTD policy which covered Plaintiff, policy number LTD116157 and claim number 2012-07-25-0173-LTD-01. Matrix was the initial administrator of this policy, and Reliance had the final decision on claims administration. This second policy, number LTD116157, is the subject of the instant lawsuit.

  It appears Pavlovitz's prior counsel was also confused by the existence of two different LTD policies, as policy number LTD-4609 was attached as an exhibit to the Complaint and the Complaint repeatedly references correspondence that was sent to Matrix regarding claim number 726739, neither of which involved the Reliance LTD policy at issue. To clarify, my decision today is based upon a review of the

Pavlovitz then continued to pursue the instant action, contending that Reliance's conclusions that she did not meet the 360 day elimination period, failed to qualify as an eligible employee under the Policy and that her bipolar disorder was a pre-existing condition were unreasonable. For the reasons that follow, I find that Reliance did not act arbitrarily in denying Pavlovitz's claim for LTD benefits.

## II.　LEGAL STANDARD

The denial of benefits under an ERISA qualified plan is reviewed using a deferential standard.  Where the plan administrator has discretion to interpret the plan and to decide whether benefits are payable, the exercise of its fiduciary discretion is judged by an arbitrary and capricious standard. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir.2011) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008)). Under this limited and deferential review, Reliance's adverse determination may not be reversed unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011), quoting Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 41 (3d Cir. 1993).[3]

The court "is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Abnathya v. Hoffmann La Roche, Inc., 2 F.3d 40, 45 (3d Cir.1993), abrogated on other grounds by Glenn, 554 U.S. 105. While "the arbitrary and capricious standard is extremely deferential, it is not without some teeth. Deferential review is not no review, and deference need not be abject." Kuntz v. Aetna Inc., 2013 WL 2147945 (E.D.Pa. May 17, 2013) (internal quotations omitted). In

---

administrative record as it pertains to claim number 2012-07-25-0173-LTD-01, which is the only one of Pavlovitz's claims administered by Reliance Standard and which is the claim that is the subject of this ERISA matter.
[3] Pavlovitz agrees that MetLife's denial of her LTD benefits should be subject to an arbitrary and capricious standard of review.  (See Pl's Brief in support of MSJ at pp. 10-11.)

4

addition, a court's review of factual determinations is limited to the administrative record that was before the administrator when it made the decision being reviewed. Carney v. IBEW Local Union 98 Pension Fund, 66 F. App'x 381, 385 (3d Cir.2003) (quoting Mitchell v. Eastman Kodak Co., 113 F .3d 433, 440 (3d Cir.1997)).

Summary judgment is appropriate where "the moving party is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "Where the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Davis v. Broadspire Servs., Inc., 2006 WL 3486464, at *1 (E.D.Pa. Dec. 1, 2006) (quoting Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir.1999)).

### III. DISCUSSION

Pavlovitz moves for summary judgment, claiming that Reliance's decision to deny her LTD benefits was not reasonable. Defendant Reliance argues that it is entitled to summary judgment because its claim determination was reasonable, consistent with the plan language and supported by substantial evidence. For reasons set forth below, I will grant Reliance's Motion for Summary Judgment and deny Pavlovitz's Motion for Summary Judgment.

#### 1. Medical Evidence

Pavlovitz treated with Dr. Mambu, her family doctor, on May 25, 2010, June 1, 2010, July 20, 2010, and October 14, 2010. (AR. 610-619.) While those visits were all for unrelated issues, all of the treatment notes reflect that she was taking Clonazepam to

address her anxiety, and all but the October 14, 2010 note show that she was taking Prozac to deal with her adjustment disorder with depressed mood. (AR. 619, 614, 612, 610-611.)

On June 21, 2011, Pavlovitz saw Dr. Mambu prior to both her appendectomy and her mastectomy, and her current problems included, *inter alia*, anxiety (for which she was taking Klonopin), depression and adjustment disorder with depressed mood. (AR 431, 433.) On that date, Dr. Mambu noted that she was handling the stress associated with her mother being in hospice much better and that she seemed to be calmer and more in control of her emotions. (AR 430.) On June 27, 2011, Pavlovitz stopped working, and on June 29, 2011, she underwent an appendectomy. Thereafter, on July 13, 2011, she had a mastectomy.

On July 20, 2011, Plaintiff returned to Dr. Mambu and reported anxiety and abdominal pain. (AR. 427.) On this date, Plaintiff noted no breast pain, and Dr. Mambu noted that she seemed to be calmer and more in control of her emotions. (AR 429-430.)

On September 1, 2011, Pavlovitz saw Dr. Mambu again and reported that she was "feeling well," but suffered from fatigue, anxiety and depression. (AR 328.) Her past problem list included, *inter alia*, anxiety and adjustment disorder with depressed mood. (Id.) Plaintiff's mediation history included Clonazepam for anxiety, Prozac and Topamax. The plan was to continue Plaintiff's Prozac and Clonazepam and she was to follow up in 6 weeks. (AR 330.)

On September 24, 2011, Plaintiff followed up with Dr. Mambu's office. At that point, she was assessed with chronic pain syndrome caused by pain in both breasts, and she was prescribed Tramadol. (AR 324.) There were no complaints at this visit of anxiety

6

or depression. (Id.) She treated at Dr. Mambu's office again on November 9, 2011, to get paperwork filled out for her disability insurance application, and at that point, she agreed to return to work at the end of January or the beginning of February. (AR 321.)

Pavlovitz saw Dr. Mambu again on December 1, 2011, and reported her current problems to be anxiety, nervousness and sleep disturbance. (AR 317.) At this time, Dr. Mambu noted that she did not have breast pain. (Id.) On December 14, 2011, Plaintiff presented to Dr. Mambu's office for a nurse visit. (AR. 314-315.) She reported being upset because her "long term insurance" was denied. (AR 314.) Pavlovitz was reminded that her mastectomy had taken place in July and it was now December and that most insurance companies would not have allowed her to be out of work this long. (Id.) Pavlovitz reported that she would be seeing her surgeon the next day and that "he would state that she is well enough to go back to work." (Id.) Plaintiff was again noted to suffer from adjustment disorder with depressed mood and bilateral breast reconstruction following a mastectomy. (AR 315.)

On January 19, 2012, Pavlovitz returned to Dr. Mambu and reported that her current problems again included anxiety, depression and sleep disturbance. (AR 310.) Dr. Mambu noted that Plaintiff had no breast pain, and that she was post mastectomy that was "successfully done." (AR 311.) In treatment of her adjustment disorder, Dr. Mambu continued her Clonazepam and Prozac, and recommended psychological counseling. (AR 312.) On February 15, 2012, Pavlovitz saw Dr. Mambu again, seeking a letter permitting her to be out of work and a referral for a psychiatrist closer to home. (AR 306.) Plaintiff's complaints again included anxiety, depression, nervousness and sleep disturbances. (Id.) Dr. Mambu referred her to Dr. Scott Fleischer. (AR 306.)

On February 27, 2012, Pavlovitz saw Dr. Scott Fleischer for the first time. (AR. 716-719.) Dr. Fleischer's notes reflect that Pavlovitz had been taking Prozac since 1989, and that her condition "had been stable for years until 12/11, mom died 11/11 and gradually has become more depressed." (AR 716.) He also noted that Plaintiff's psychiatric history dates back to 1996 under the care of Dr. Uffna up until 2003 and that she was hospitalized twice, once in the late 1990's. (AR 717.) Dr. Fleischer diagnosed Plaintiff with bipolar II – depressed type. (AR 718.)

On March 14, 2012, Plaintiff saw Dr. Mambu again and reported that she thought highly of Dr. Fleischer and was also seeing a therapist. (AR 302.) She was on her second week of Wellbutrin, and Dr. Mambu noted that Plaintiff needed clearance from her surgeon and her psychiatrist to resume her work duties as an RN. (AR 302, 304.) On April 11, 2012, Dr. Mambu noted that Pavlovitz was not ready to return to full-time employment. (AR 298.) On that same date, he completed a Residual Functional Capacity Questionnaire in which he stated Pavlovitz suffered from "bipolar disorder – depressed - severe, adjustment reaction, adjustment disorder with depressed mood." (AR 249.) Dr. Mambu stated that Pavlovitz was incapable of even low stress jobs due to her severe depression and anxiety. (AR 250.)

Pavlovitz saw a therapist at Dr. Mambu's office twenty-one times between March of 2012 and December of 2012. (AR 694-715.) All of these notes document continued depression and little progress being made toward achieving her goals of reducing her depression and anxiety. (Id.)

On January 7, 2013, Dr. Fleischer completed a Physician's Report-Psychiatric for Matrix. (AR 685.) In this report, Dr. Fleischer opined that Plaintiff suffered from bipolar

8

II – depressive type and that her depression was interfering with her ability to work. (Id.) He stated that she was "severely impaired" and that her anticipated return to work date was "indefinite." (AR 686.)

### 2. Reasonableness of Claims Determination

As stated previously, where an ERISA governed plan grants discretionary authority to the claims administrator to determine eligibility for benefits, as in this case, a court reviewing a benefits determination uses an "arbitrary and capricious" standard of review. Firestone, 489 U.S. at 115. In determining whether a benefits determination is arbitrary and capricious, the court must evaluate whether the determination was reasonable. Abnathya, 2 F.3d at 45. After a review of the administrative record, I find Reliance's benefits determination was reasonable and therefore, was not arbitrary and capricious.

### A. 360 Day Elimination Period

Pavlovitz began working for Albert Einstein Healthcare Network on May 3, 2010. Accordingly, she was an eligible participant in its employee welfare benefit plan, which included a Reliance Standard group long term disability policy. This policy provided:

> We will pay a Monthly Benefit if an Insured:
>
> (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
> (2) is under the regular care of a Physician;
> (3) has completed the Elimination Period; and
> (4) submits satisfactory proof of Total Disability to us.

(AR 20.) The Elimination Period is defined to mean "a period of consecutive days of Total Disability . . . for which no benefit is payable. It begins on the first day of Total Disability." (AR 11.)

In this case, Pavlovitz's Elimination Period began on June 27, 2011, the day she stopped working due to the emergency appendectomy that was performed on June 29, 2011 and for which she submitted a claim for disability benefits. (AR 291-292, 548.) Accordingly, to qualify for long term disability benefits under the policy in question, Pavlovitz would need to be totally disabled for 360 days from June 27, 2011. Reliance obtained a specialist in internal medicine, Monroe Karetzky, M.D., who reviewed all of Pavlovitz's medical records. (AR 744-759.) Dr. Karetzky opined that Pavolvitz's "impairments at the date of loss 6/27/11 included the diagnosis of …appendicitis as detected on an abdominal CT reported 6/27" and that the "dates of disability for these diagnoses begin on the day of diagnosis of appendicitis…" (AR 756.) Dr. Karetzky further stated that "[t]he duration of disability is 2 weeks following the diagnosis of appendicitis." (AR 756.) Further, the record shows that Pavlovitz did not suffer any complications from the appendectomy that would suggest a longer recovery period.

Pavlovitz stopped working due to her appendix on June 27, 2011 and underwent the appendectomy on June 29, 2011. She has presented no evidence to refute the two-week recovery time discussed by Dr. Karetzky. Accordingly, she was no longer disabled from the appendectomy as of July 11, 2011, which clearly did not satisfy the 360 day Elimination Period found in the Policy.

After Pavlovitz's recovery from the appendectomy, she underwent a mastectomy on July 13, 2011, for which she has also claimed disability. (AR 410-411.) The operative report stated that she was a "51 year old female with previous mastectomy on the left side. The patient wished to undergo a right mastectomy and to get reconstruction on both sides at the same procedure." (AR 410.) Reliance had Dr. Karetzky review the records

10

relating to Pavlovitz's mastectomy as well. (AR 744-759.) Dr. Karetzky stated that the "duration of disability is … 4 weeks following elective mastectomy." (AR 756.) Reliance found that Pavlovitz's disability from the mastectomy would only have lasted 4 weeks, as opined by Dr. Karetzky, and therefore, she did not satisfy the 360 day Elimination Period. Even if the disability periods for the appendectomy and the mastectomy were taken together, Pavlovitz was only disabled for 6 weeks, still not satisfying the 360 day Elimination Period.

Based upon Dr. Karetzky's opinion, Reliance concluded that Pavlovitz was not disabled for a total of 360 days. In Pavlovitz's Motion for Summary Judgment and supporting brief, she claims for the first time that she suffered complications from the breast surgery in the form of severe pain, and that pain rendered her disabled. (Pl's MSJ, ¶ 6.) Pavlovitz argues that Reliance "completely ignored [her] Chronic Pain Syndrome, failing to even comment on the effects of the Chronic Pain Syndrome on her ability to work" and that Reliance "refused to acknowledge Plaintiff's failed surgery and resultant Chronic Pain Syndrome produced her mental disability," which is "confirmed by the numerous reports of Plaintiff's physicians." (Pl's Memo of Law in Support of SJ, unnumbered pp. 3-4.) I have considered this argument and I still find that Reliance did not act unreasonably in finding that Pavlovitz was not Totally Disabled for 360 days and therefore did not satisfy the Elimination Period under the Policy.

When Pavlovitz applied for LTD benefits in November of 2011, she complained of "pain, vomiting, severe pain, bleeding" related to her abdominal pain. (AR 343.) In terms of the symptoms from her breast surgery, Pavlovitz stated that her breast cancer symptoms were "found on breast self-exam" and that she was first treated by a physician

11

for the breast symptoms on July 14, 2011. (AR 343) Pavlovitz's application for LTD benefits made no mention of pain from the breast surgery, despite the fact that the surgery was completed four months before she applied for LTD benefits.

Further, a review of Pavlovitz's medical records does not show any continuing disability from the breast surgery. Pavlovitz argues that after the breast surgery, she developed an adjustment reaction disorder and chronic pain syndrome. Although Dr. Mambu noted chronic pain syndrome caused by pain in both breasts on September 24, 2011, (AR 343) by November of 2011, she agreed to return to work in late January or early February, (AR 321) and by December of 2011, she had no complaints of breast pain. (AR 317.) After December of 2011, Pavlovitz had no further complaints of breast pain. Even assuming the mastectomy was performed during a time when she was covered by the Policy, and assuming it caused her pain beyond the 6 week recovery period opined to by Dr. Karetzky, she had no complaints of breast pain as of December of 2011, five months after the mastectomy. Clearly, even this time period does not satisfy the Policy's 360 day elimination period.

However, as will be discussed more fully below, Pavlovitz was no longer covered under the Policy in question at the time of the mastectomy. Therefore, even if the mastectomy did cause her long term problems such as an adjustment reaction disorder or chronic pain syndrome, she was not covered for this period of time and did not meet the 360 day elimination period.

My review of the administrative record shows that there is no evidence that Plaintiff suffered from disabling pain and disorders so as to render her disabled for at least 360 days. Therefore, Reliance did not act arbitrarily when it denied her benefits due

to her failure to satisfy the policy's 360 day elimination period. I find that, based on the record as discussed above, there was substantial evidence from which Reliance could have reasonably concluded that Pavlovitz did not meet the 360 day Elimination Period and therefore, did not meet the criteria for benefits under the Plan. Accordingly, Reliance was not arbitratry and capricious in its denial of Plaintiff's benefits.

### B. Coverage Under Plan When Claims Arose

The Policy in question also provides coverage only to "active, regular Full-time employees . . . " (AR 9.) The Policy further states that an employee is actively at work if he or she is "actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed." (AR 11.) The Policy further states that the definition of "actively at work" includes "approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness." (Id.) "Sickness" is defined by the Policy to mean "illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured." (AR 12.)

There is no dispute in this matter that Pavlovitz stopped working on June 27, 2011 when she was diagnosed with an appendicitis and never returned to work for even a single day after that. When she underwent her mastectomy on July 13, 2011, she was not "actively at work" as defined by the Policy, because she was off work due to sickness caused by the appendectomy. Plaintiff's coverage under the Policy in question ended when she was recovered from her appendectomy and failed to return to work. As she never returned to work, she had no coverage whatsoever under the Policy from mid-July of 2011 on. Further, even if Pavlovitz was totally disabled from the appendectomy and

13

totally disabled from the mastectomy, she was fully recovered from both procedures within six weeks and still did not return to work. Even if her coverage had not ended when she failed to return to work after the appendectomy, it would have ended when she failed to return to work after the mastectomy. Accordingly, Reliance did not act arbitrarily in denying her coverage under the Policy in question for the July 13, 2011 mastectomy and any resultant conditions.

### C. Pre-Existing Condition

As discussed above, Pavlovitz was diagnosed with Bipolar disorder, depressed type by Dr. Scott Fleischer on February 27, 2012.[4] However, Plaintiff is also not entitled to benefits under the Policy in question because the bipolar disorder is a pre-existing condition. The Policy defines "Pre-existing Condition" as "any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the ninety (90) days immediately prior to the Insured's effective date of insurance." (AR 11.) The Policy does not pay a benefit for any disability that is caused by, contributed to by or results from a Pre-existing Condition. (AR 24.)

Pavlovitz's insurance became effective on August 1, 2010, ninety days after she started working at Einstein. (AR 9, 347, 762.) Therefore, pursuant to the Policy, she was required to have been treatment-free under the Pre-existing Condition limitation from May 1, 2010 to August 1, 2010. (AR 11, 762.) Although Dr. Fleischer didn't formally diagnose Pavlovitz with Bipolar disorder until February 27, 2012, her medical records show that she had been receiving medication and treatment for this disorder for many

---

[4] Significantly, Plaintiff never claimed bipolar disorder or any sort of mental disorder as a condition in her application for disability benefits. (AR 343-347.)

14

years prior to her diagnosis, including during the look-back period from May 1, 2010 to August 1, 2010. Specifically, on June 10, 2010 and July 27, 2010, Pavlovitz was taking Topiramate, Fluoxtine, Clonazepamand and Zolpidem. (AR 596, 682.)

When examining Plaintiff's mental history, Dr. Karetzky stated as follows:

[Pavlovitz] has a psychiatric history according to the 2/27/12 note in the reocrds of the Fleischer Associates dated to 1996 under the care of Dr. Uffna. Her ongoing symptoms of Bipolar II were being treated according to the 1/17/13 note of Dr. Scott Fleischer with antidepressants Prozac and Wellbutin, antianxiety drug Klonopin and sleep promoter Lunesta as well as Lamictal that apparently replaced Topamax, started in 2008, as an antimanic mood stabilizer. She had been on Prozac since 1989. The 10/14/10 note of Dr. Mambu indicates ongoing depression, anxiety and nervousness. She had been considered stable for years on her drug regimen until December 2011 when her depression increased following her mother's death in November.

1. In summary, I conclude with a reasonable degree of medical probability that Marianne Pavlovitz' Bipolar II Depressed Type is long standing and preexisting to 6/27/11. The records reviewed indicate psychiatric therapy began in 1996 requiring hospitalization on 2 occasions and required continued treatment up to the present time.

2. The medications for Bipolar II Depressed Type including Topiramate, Fluoxtine, Clonazepamand, Zolpidem were being prescribed during the period of 5/1/10 to 8/1/10.

(AR 746.) There is nothing in the medical records that rebuts Dr. Karetzky's conclusions that Pavlovitz was receiving medications to treat bipolar disorder during the 90 day look back period. Therefore, it was reasonable for Reliance to deny Pavlovitz's claim for benefits on the basis of her pre-existing mental conditions and its denial of her claim was not arbitrary and capricious.

### 3. Breach of Contract Claim

Pavlovitz's Complaint includes a state law claim for breach of contract. (Compl.,

15

¶¶ 32-36.) The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. Aetna Health, Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). "To this end, ERISA includes expansive pre-emption provisions (see 29 U.S.C. § 1144) which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Id., quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

ERISA's express preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144. In other words, a state law is preempted if it "relates to" an employee benefit plan. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). A law "relates to" an employee benefit plan if it "has a connection with or reference to such a plan." Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989), quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

The Third Circuit has found that state law breach of contract claims arising from a denial of coverage under an employee benefit plan are preempted by ERISA's express preemption clause. Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 278 (3d Cir. 2001). As the plan in question is an ERISA plan, and Plaintiff's breach of contract claim is for benefits allegedly due under this plan, Plaintiff's claim for breach of contract is expressly preempted by ERISA and must be dismissed.

### 3. Claims Against Matrix Absence Management, Inc.

Pavlovitz's Complaint includes Matrix, the initial claims administrator, as a

Defendant in this matter. However, Matrix is not a proper party to this ERISA claim. Matrix did not issue the LTD policy in question, and had no discretion in how the plan was managed or how the funds are paid out under the policy. Therefore, Plaintiff's ERISA claim against Matrix must fail.

## IV. <u>CONCLUSION</u>

The record supports the finding that, as defined in the Plan and reasonably interpreted by Reliance, Pavlovitz is clearly not entitled to any benefits under the Policy in question. Reliance's conclusions were based on the record and were not arbitrary and capricious. Therefore, the Motion for Summary Judgment of Reliance is granted and the Motion for Summary Judgment of Plaintiff, Marianne Pavlovitz, is denied.